IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RENAE INEZ JOHNSON                                                              PLAINTIFF

V.                              NO. 12-5229

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Renae Inez Johnson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on August 25, 2009, alleging an inability to work since August 25, 2009, due to Ptsd (post-traumatic stress disorder), depression, and panic disorders. (Tr. 114-120, 126,148). An administrative hearing was held on May 12, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 32-54).

By written decision dated June 6, 2011, the ALJ found that during the relevant time

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

period, Plaintiff had an impairment or combination of impairments that were severe - panic disorder with agoraphobia and obesity. (Tr. 15). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light exertional work as defined in 20 CFR 404.1567(b) and 416.967(b). Additionally, the claimant is "moderately" limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others.

(Tr. 16). With the help of a vocational expert (VE), the ALJ determined Plaintiff was unable to perform any past relevant work, but there were other jobs Plaintiff would be able to perform, such as housekeeper, hand packager, and mail clerk. (Tr. 21-22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 24, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial

gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff argues on appeal that she meets Social Security Listing 12.06(A)(3)(C), based upon recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week resulting in complete inability to function independently outside the area of one's home. (Doc. 11).

"To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010), citing Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004); 20 C.F.R. §§ 404.1526(b), 416.926(b).

In order to meet Listing 12.06(A)(3) and (C), Plaintiff's impairments must meet all the following criteria:

> 12.06 - Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or

AO72A
(Rev. 8/82)

>situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
>The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>>A. Medically documented findings of at least one of the following:
>>. . .
>>3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;
>>...
>>AND
>>...
>>C. Resulting in complete inability to function independently outside the area of one's home.

See 20 C.F.R. pt. 404, subpt. P, app. 1, §12.06.

Plaintiff has a history of seeking treatment for mental impairments, beginning in 1998, while still a teenager. (Tr. 171-248, 589-622, 623-641, 643-644, 681-688, 690-702, 703, 707, 707-718, 719-735, 736-737).

On December 16, 2008, Plaintiff presented to Ozark Guidance Center, complaining of mood swings, anger, bipolar disorder traits, alcohol, feeling stuck and having anger toward her husband. (Tr. 738). When she returned to Ozark Guidance Center on January 8, 2009, the therapist reported that Plaintiff continued to display somewhat childish and immature reactions and coping skills, saying that "it is too cold to exercise." (Tr. 739). Claimant was again seen by Ozark Guidance Center on April 10, 2009, complaining of panic attacks, and it was reported that she had previously been prescribed Klonopin, which helped her, but she quit when she became pregnant with her daughter about two years previously. The panic attacks reportedly started again the prior week after separating from her husband. (Tr. 740). That same day, Plaintiff was

seen at Northwest Medical Center, complaining of an anxiety attack, reporting that she had been under a lot of stress and felt dizzy, lightheaded and anxious. (Tr. 377). She also reported smoking. (Tr. 377). The clinical impression at that time was "hyperthyroid." (Tr. 379). X-rays of Plaintiff's chest and a CT of her head revealed no active disease in her chest and a negative head CT. (Tr. 390).

On June 1, 2009, Plaintiff saw Dr. Adam J. Maass at Mercy Physicians Plaza, who assess Plaintiff with hyperthyroidism, and noted that Plaintiff smoked a pack of cigarettes every 3 days and had occasional alcohol. (Tr. 584).

On June 9, 2009, a report from Ozark Guidance Center indicated that Plaintiff lost contact and did not follow through. (Tr. 741). At that time, the diagnosis was:

>     Axis I:     Panic disorder w/o agoraphobia
>                 Dysthymic disorder
>     Axis 2:     no diagnosis
>                 Cluster B traits
>     Axis 3:     none known
>     Axis 4:     problems with primary support group
>                 problems related to social environment
>     Axis 5:     Current GAF - 54

(Tr. 741).

On March 11, 2010, Dr. Terry L. Efird, Ph.D., conducted a Mental Diagnostic Evaluation. (Tr. 552-555). Dr. Efird noted that Plaintiff applied for disability because she was suffering from panic attacks. (Tr. 552). Dr. Efird diagnosed Plaintiff with:

>     Axis I:      panic disorder, with agoraphobia
>     Axis II:     personality disorder NOS cluster B traits
>     Axis V:      50-60

(Tr. 555). He also found that Plaintiff endorsed the ability to perform most activities of daily

living, communicated and interacted in a reasonably socially adequate manner, communicated in a reasonably intelligible and effective manner, and had the capacity to perform basic cognitive tasks required for basic work like activities. (Tr. 555).   Dr. Efird found Plaintiff had no remarkable indications of cognitive inefficiency, attention/concentration, persistence, and mental pace of performance. (Tr. 555).

On March 15, 2010, non-examining consultant, Dr. Brad F. Williams, Ph.D., completed a Mental RFC Assessment and Psychiatric Review Technique form. (Tr. 557-559, 561-573). Dr. Williams concluded that Plaintiff would be able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work, where complexity of tasks was learned and performed by rote, with few variables, and little judgment, and where supervision required was simple, direct and concrete. (Tr. 559). This conclusion was affirmed by Dr. Kay Cogbill in a Case Analysis on April 29, 2010. (Tr. 579).

On January 27, 2011, Plaintiff began visiting Ozark Guidance Center again, reporting an increase in depression and anxiety. (Tr. 745).  At that time, Plaintiff reported she was not taking her thyroid medication and did not receive medical treatment because she did not have any money. (Tr. 749). Plaintiff was diagnosed then as follows:

```
Axis I:      Adjustment d/o w/ mix anxiety & dep mood
Axis II:     diagnosis deferred
             R/O borderline personality disorder
Axis III:    Primary hyperthyroidism
Axis V:      33
```

(Tr. 749). Subsequent thereto, in February of 2011, Plaintiff participated in group therapy at Ozark Guidance Center, was reported as being an active participant, felt "relaxed" after therapy, was talkative and attentive in group, and asked questions and gave feedback to group members.

(Tr. 754, 757, 759).

At the hearing, Plaintiff testified that she was fired from her last employment in 2009. (Tr. 38). She testified that she was having some issues bringing her personal life and anxiety to work and was unable to finish her job properly. (Tr. 39). She testified that she had panic attacks when she was driving and that she had a fear of open spaces. (Tr. 45-46). She stated that she had no problems doing household chores and felt the safest in her house. (Tr. 46).

The Court first notes that Plaintiff indicated that Klonopin helped her anxiety, but she stopped taking it when she was pregnant, and never resumed taking the medication. Although Plaintiff claims she was unable to afford the medication, the ALJ found this was not reasonable, in that there were public facilities available to those who do not have insurance or who were unable to pay for medical care. (Tr. 19). There is no indication that Plaintiff was ever refused treatment for financial reasons, and Plaintiff was somehow able to afford to continue to smoke cigarettes. If an impairment can be controlled by treatment or medication it cannot be considered disabling. Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010).

Listing 12.06 requires Plaintiff to have "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week." There is no medical evidence indicating such symptoms occurred. Plaintiff described her symptoms in various ways: light headed and anxious; dizzy; panic attacks; and depression. (Tr. 374, 552, 581, 745). Furthermore, when Plaintiff participated in group therapy treatment in February of 2011, Plaintiff was an active participant, talkative and attentive. These factors are inconsistent with a person having "sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average

AO72A
(Rev. 8/82)

of at least once a week."

Finally, the records do not reflect that Plaintiff's anxiety resulted in "complete inability to function independently outside the area of one's home." She has her own car, drives her child to school daily, drives to doctor's appointments, and is able to attend group therapy sessions at Ozark Guidance Center. (Tr. 41, 553).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments did not meet Listing 12.06(A)(3) and (C).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 7th day of February, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE